No. 110,164

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW J. MARION,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 2013 Supp. 22-3717(d)(1)(G) states that "persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life."

2.

An offender subject to lifetime postrelease supervision could be confined for the rest of his or her life without the possibility for release if supervision is revoked as a result of a new conviction. This is true even if that conviction does not result in the imposition of a new term of imprisonment.

3.

When determining whether a sentence is cruel or unusual under § 9 of the Kansas Constitution Bill of Rights, a district court makes both legal and factual determinations. An appellate court applies a bifurcated standard of review. All the evidence is reviewed, but not reweighed, to determine whether it is sufficient to support the district court's

1

factual findings, but the legal conclusions that the district court draws from those facts are reviewed de novo.

4.

A statute is presumed constitutional, and all doubts must be resolved in favor of its validity.

5.

Section 9 of the Kansas Constitution Bill of Rights states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." Our Supreme Court has interpreted § 9 to prohibit punishment so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.

6.

There are three factors to weigh when assessing proportionality challenges under § 9 of the Kansas Constitution Bill of Rights:  (1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment; (2) a comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and (3) a comparison of the penalty with punishments in other jurisdictions for the same offense.

7.

The imposition of lifetime postrelease supervision for the crime of indecent liberties with a child, a sexually violent offense, is not grossly disproportionate to the sentence imposed for other, more serious offenses in Kansas.

8.

In this case, the district court's imposition of lifetime postrelease supervision is not so disproportionate to the conviction that it shocks the conscience and offends fundamental notions of human dignity.

9.

The concept of proportionality is central to the Eighth Amendment to the United States Constitution. Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense.

10.

There are two ways to succeed on a proportionality claim. The first challenges the sentence as disproportionate given all the circumstances in a particular case. The second way to mount a proportionality challenge is to show that an entire class of sentences is unconstitutionally disproportionate given the severity of the sentence, the gravity of the crime, and the type of offender.

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed August 22, 2014. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Christina Trocheck*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON and STEGALL, JJ.

PIERRON, J.:  Matthew J. Marion entered a plea of nolo contendere to one count of indecent liberties with a child, a severity level 5 person felony. The district court sentenced him to 34 months' imprisonment and a lifetime term of postrelease supervision. Marion appeals, arguing his sentence of lifetime postrelease supervision is grossly disproportionate and therefore violates the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. We affirm.

On February 12, 2012, 25-year-old Marion traveled from Georgia to Salina to visit his cousin, 14-year-old P.M. Marion and P.M. had met approximately 1 year before at their grandmother's birthday party. Since that time, the two had kept in touch through telephone conversations and Facebook. After a few months, their conversations grew sexual in nature. Marion learned their grandmother was ill and decided to visit P.M. under the pretense of visiting their ailing grandmother. P.M.'s parents allowed Marion to stay at the family's home in the bedroom next to P.M.'s bedroom.

On the evening of February 12, the first night of Marion's stay, he asked P.M. to come to his bedroom after everyone else went to bed. P.M. came to his room as requested. Marion and P.M. talked for awhile and then began to kiss. After approximately 5 minutes, P.M. left and went back to her own bedroom. On February 14, shortly after midnight, P.M. once again went to Marion's bedroom after everyone else in the house was asleep. Marion and P.M. immediately started kissing. Marion began touching P.M.'s breasts under her clothing. About 20 minutes after P.M. entered the bedroom, the two engaged in sexual intercourse, which P.M. later described to police as Marion inserting

4

his penis into her vagina. Marion was on top of P.M. as she lay on her back. P.M. estimated that the incident lasted 30 minutes.

P.M. later told a friend about the incident, but P.M. said that she and Marion had only kissed. The friend told her church pastor, and the pastor in turn contacted P.M.'s mother. P.M.'s mother confronted P.M. and Marion. P.M. eventually admitted to her mother that she had sexual intercourse with Marion. Marion left the family's residence before the incident was reported to police. P.M. underwent a sexual assault examination, which indicated bruising to her vaginal area and a tear to her hymen. The sexual assault nurse examiner concluded that it appeared P.M. had engaged in sexual intercourse.

On March 30, 2012, Marion was charged with two counts of indecent liberties with a child, a severity level 5 person felony, and one count of aggravated indecent liberties with a child, a severity level 3 person felony. On October 8, 2012, Marion pled nolo contendere to one count of indecent liberties with a child. The State dismissed the remaining counts, and the parties agreed to jointly recommend that Marion serve a sentence of 34 months' imprisonment. The district court filed an order accepting the plea on October 9, 2012.

Prior to sentencing, Marion filed a motion challenging lifetime postrelease supervision as cruel and unusual punishment under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution. The district court heard arguments on the motion on December 19, 2012, at Marion's sentencing hearing. The court considered and made detailed findings under the three factors outlined in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). The court ultimately denied Marion's motion and sentenced him to 34 months' imprisonment and lifetime postrelease supervision.

5

Marion timely appeals the sentence imposed by the district court.

Marion first argues his sentence of lifetime postrelease supervision is grossly disproportionate and therefore violates the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution. The State responds Marion's sentence does not violate the constitutional prohibition of cruel and unusual punishment and should be upheld.

*The Claim under the Kansas Constitution*

Marion contends an analysis of the factors in *Freeman* reveals his lifetime term of postrelease supervision constitutes cruel and unusual punishment. He asserts that the nature of the offense and the character of the offender are not such that would warrant lifetime postrelease supervision. Marion concludes his sentence is grossly disproportionate and must be vacated. The State disagrees, arguing that an analysis of the *Freeman* factors—individually or combined—demonstrates that lifetime postrelease supervision is not cruel or unusual punishment.

K.S.A. 2013 Supp. 22-3717(d)(1)(G) states that "persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." K.S.A. 2013 Supp. 22-3717(d)(5)(B) establishes that indecent liberties with a child, Marion's crime of conviction, is a sexually violent crime. While on lifetime postrelease supervision, an offender must comply with the conditions of his or her release. If a violation results from a new conviction, the offender may be required to serve the entire remaining balance of postrelease supervision. K.S.A. 2013 Supp. 75-5217(c)-(d). Thus, an offender subject to lifetime postrelease supervision could be confined for the rest of his or her life without the possibility for release if supervision is

6

revoked as a result of a new conviction. This is true even if that conviction does not result in the imposition of a new term of imprisonment. K.S.A. 2013 Supp. 75-5217(c).

When determining whether a sentence is cruel or unusual under § 9 of the Kansas Constitution Bill of Rights, a district court makes both legal and factual determinations. An appellate court applies a bifurcated standard of review. All the evidence is reviewed, but not reweighed, to determine whether it is sufficient to support the district court's factual findings, but the legal conclusions that the district court draws from those facts are reviewed de novo. *State v. Ross*, 295 Kan. 424, 425-26, 284 P.3d 309 (2012). "A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court has the authority and the duty to do so. [Citations omitted.]" 295 Kan. at 426.

Section 9 of the Kansas Constitution Bill of Rights states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." In *Freeman*, 223 Kan. at 367, our Supreme Court interpreted § 9 to prohibit punishment "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. [Citations omitted.]" The *Freeman* court established three factors to weigh when assessing proportionality challenges under § 9:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

7

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

Our Supreme Court recently affirmed that the *Freeman* factors constitute the appropriate test for analyzing length-of-sentence cruel or unusual punishment challenges brought under § 9. See *State v. Toahty–Harvey*, 297 Kan. 101, 106, 298 P.3d 338 (2013). No one factor controls, although one factor may weigh so heavily that it directs the final outcome. 297 Kan. at 106-07.

*The First* Freeman *Factor*

Under the first *Freeman* factor, a court should consider the nature of the offense and the character of the offender, giving particular regard to the degree of danger to society. 223 Kan. at 367. "[R]elevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment." 223 Kan. at 367.

Here, the district court made the following factual findings: Marion was 24 years old and P.M. was 13 years old when they first met. He was invited to P.M.'s home by her parents, and he abused their trust. Marion manipulated P.M. for the purpose of sexually violating her despite their familial relationship. He made plans to travel to Kansas under a false pretense for the purpose of having sex with P.M. Marion engaged in sexual intercourse with P.M. when she was 14 years old. She suffered physical injuries as well as significant psychological and emotional injuries. Marion was solely responsible for the damage done to P.M. Marion's crimes were calculated and violent—both physically and emotionally.

8

Regarding the penological purposes of lifetime postrelease supervision, the district court found there was a public safety interest in requiring a longer term of supervision for individuals who violate persons whose age renders them unable to consent. The court stated lifetime postrelease supervision serves the purpose of incapacitation because it puts offenders under the supervision of trained individuals who can take swift action if they detect problems that could result in harm to other victims. The court further stated such supervision is designed to deter future crimes—particularly in the case of sex offenders because there is a high rate of recidivism.

On appeal, Marion does not challenge the district court's factual findings. He simply argues the nature of the offense and the character of the offender in his case do not merit a lifetime period of postrelease supervision. Regarding the nature of the offense, Marion contends the acts that occurred between him and P.M. were consensual and not violent in nature. Regarding the character of the offender, Marion notes his criminal history score of I, a lack of any prior sex crimes in his history, and the fact there is only one victim in the present case. He offers all three facts as evidence he is not a career criminal and does not present a large degree of danger to society. Marion also asserts he was young at the time of the offense, as well as "'immature'" and "'unsophisticated.'"

The district court acknowledged Marion's statement at his sentencing hearing that he was reforming his behavior and now on the right path in life. However, the court concluded: "Mr. Marion is solely responsible for the resulting physical and emotional and psychological damage that he did to this 14 year old girl. The Court views these crimes as calculated and a base violation of a child." There is substantial competent evidence to support the court's findings on the first *Freeman* factor, and considerations under the first factor support the imposition of lifetime postrelease supervision.

*The Second* Freeman *Factor*

The second *Freeman* factor requires "[a] comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses." 223 Kan. at 367. If more serious crimes are punished less severely, the challenged penalty is to that extent suspect. 223 Kan. at 367. Marion argued in his motion concerning postrelease supervision that there are many more serious offenses—including second-degree murder—which Kansas punishes with shorter terms of postrelease supervision than that imposed in the present case.

The district court rejected Marion's argument, finding:

"[T]he length of sentence imposed is generally a matter of legislative prerogative and the legislature in sexually violent cases has determined that sex crimes are among the most serious. Ultimately this Court finds that the proportionality of a sentence cannot be based solely on the comparison of the postrelease supervision terms. . . . The defendant in this case will serve a majority of his sentence in a very—a less restrictive environment than someone who's convicted of a crime as cited by the defense."

On appeal, Marion contends that under the guidelines of lifetime postrelease supervision, future felony or misdemeanor convictions could result in him serving the remainder of his life in prison. However, our Supreme Court has previously rejected attempts to focus on the potential consequences of violating lifetime postrelease supervision, finding that such consequences are a separate issue from the question of disproportionality. See *State v. Mossman*, 294 Kan. 901, 914-17, 281 P.3d 153 (2012).

Marion further argues he would have received a less severe term of postrelease supervision had he committed "the more severe crime of intentional second-degree murder." He also cites the United States Supreme Court's decision in *Coker v. Georgia*,

10

433 U.S. 584, 598, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977), as recognizing that even forcible child rape is a less serious crime than murder. Marion asserts that if rape is a less serious crime than murder, then it follows that indecent liberties with a child is also a less serious crime than murder. He concludes that under *Freeman*, the challenged penalty is to that extent suspect.

Marion lists five offenses he asserts are more serious than his own crime of conviction that carry 36-month terms of postrelease supervision: second-degree murder, aggravated kidnapping, aggravated human trafficking, electronic solicitation of a child, and furtherance of terrorism or illegal use of weapons of mass destruction. See K.S.A. 2013 Supp. 21-5403(b) (second-degree murder is a severity level 1 or 2 person felony); K.S.A. 2013 Supp. 21-5408(c)(2) (aggravated kidnapping is a severity level 1 person felony); K.S.A. 2013 Supp. 21-5426(c)(2) (aggravated human trafficking is a severity level 1 person felony); K.S.A. 2013 Supp. 21-5509(b)(1) and (2) (electronic solicitation of a child is a severity level 1 or 3 person felony); and K.S.A. 2013 Supp. 21-5423(e) (furtherance of terrorism or illegal use of weapons of mass destruction is a severity level 1 person felony).

Our Supreme Court, however, has rejected attempts under the second *Freeman* factor to focus on the length of postrelease supervision and instead has looked to the total length of the sentence, including actual incarceration. *Mossman*, 294 Kan. at 912-13; see *State v. Cameron*, 294 Kan. 884, 892-93, 281 P.3d 143 (2012). Furthermore, our Supreme Court has explicitly compared a sentence for a sexually violent crime, including lifetime postrelease supervision, to the sentence for second-degree murder, including the 36-month postrelease supervision term, and held:

"[W]hile a defendant subject to lifetime postrelease supervision is under a longer cumulative sentence than a defendant sentenced for second-degree murder, a 'sentence to

11

lifetime postrelease supervision [for a sexually violent offense] is not grossly disproportionate in relation to the sentence applicable to second-degree murder in Kansas when we consider the penological purposes, the seriousness of the crime, and the other concerns discussed in relation to the first *Freeman* factor.' [Citation omitted.]" *Cameron*, 294 Kan. at 893.

Based on our Supreme Court's analyses in *Mossman* and *Cameron*, we find the imposition of lifetime postrelease supervision for the crime of indecent liberties with a child, a sexually violent offense, is not grossly disproportionate to the sentence imposed for other, "more serious" offenses in Kansas. Accordingly, considerations under the second *Freeman* factor support the imposition of lifetime postrelease supervision.

*The Third* Freeman *Factor*

Finally, under the third *Freeman* factor, courts compare the punishment imposed with punishments that other jurisdictions impose for the same offense. 223 Kan. at 367. In his motion concerning postrelease supervision, Marion compared Kansas' imposition of lifetime postrelease supervision to sentencing schemes used in other states, including some that impose shorter periods of postrelease supervision and some that do not necessarily impose a lifetime term of imprisonment in response to violations. The district court acknowledged the broad range of punishments imposed by other jurisdictions, concluding: "I am not aware, as noted in *Mossman*, of any other jurisdiction that has found lifetime postrelease for a violent sex offender to be cruel and unusual punishment."

On appeal, Marion simply points out that only five states impose lifetime postrelease supervision for the offense of indecent liberties with a child. He adds that thirteen states impose mandatory lifetime postrelease supervision, but they do not apply it

12

to this class of offenses. Our Supreme Court addressed this argument in *Mossman*, finding:

> "[L]ess than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as [aggravated indecent liberties with a child], and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." 294 Kan. at 920.

Our Supreme Court followed the same rationale in *Cameron*, where the offense of conviction was aggravated indecent solicitation of a child. 294 Kan. at 894-95. The court has since reaffirmed its analysis on this factor, declining to further address it where the appellant did not offer new arguments to invite reconsideration. *Ross*, 295 Kan. at 428. Accordingly, considerations under the third *Freeman* factor support the imposition of lifetime postrelease supervision.

In summary, the district court's imposition of lifetime postrelease supervision was not so disproportionate to Marion's conviction "that it shocks the conscience and offends fundamental notions of human dignity." See *Freeman*, 223 Kan. at 367. Thus, Marion's sentence of lifetime postrelease supervision does not constitute cruel or unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights.

*The Claim under the Federal Constitution*

Marion also argues the imposition of lifetime postrelease supervision is cruel and unusual punishment in violation of the Eighth Amendment to the United States

Constitution. The State replies that Marion's case is not the rare case where the gravity of the offense and the harshness of the penalty lead to an inference of gross disproportionality.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Marion argues that lifetime postrelease supervision without the possibility of release or discharge is not graduated or proportioned to his conviction. The United States Supreme Court has found: "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' [Citation omitted.]" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

"There are two ways to succeed on a proportionality claim. The first challenges the sentence as disproportionate 'given all the circumstances in a particular case.'" *United States v. Williams*, 636 F.3d 1229, 1232 (9th Cir. 2011) (quoting *Graham*, 560 U.S. at 59). "The second way to mount a proportionality challenge is to show that an entire class of sentences is unconstitutionally disproportionate given the severity of the sentence, the gravity of the crime, and the type of offender." 636 F.3d at 1233.

*Case-Specific Challenge*

Our Supreme Court looked to the United States Supreme Court's decision in *Graham* in laying the framework for analyzing Eighth Amendment cruel and unusual punishment claims:

14

"In conducting an Eighth Amendment analysis to determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must begin by comparing the gravity of the offense and the severity of the sentence. This analysis can consider a particular offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history, and a particular offender's propensity for violence. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *State v. Gomez*, 290 Kan. 858, Syl. ¶ 5, 235 P.3d 1203 (2010).

Marion refers to his analysis of the *Freeman* factors, concluding that under the facts of his case, the severity of a lifetime term of postrelease supervision is not proportionate to the gravity of his offense. Similarly, the district court incorporated by reference its analysis of the *Freeman* factors. It concluded:

"The Court finds that usually the gross disproportionate analysis is for a term of years and comparing the gravity of the offense and the severity of the sentence, based on the facts I just enumerated, I do not find that is grossly disproportionate. The Court has taken into consideration his mental state, his motive in committing the crime. The Court views that as one purely geared toward self-gratification, self-motivation of a 24 or 25 year old essentially using and violating what was a 13 and became a 14 year old during the actual commission of the crime.

"I've considered the actual harm caused to this individual victim as I announced previously and as stated in her documents and the State's motion and the harm to society that it will see visited upon it because this does not go away in her lifetime. She will have those violations for her entire life, as will her family, and it will go on to be an issue that she will deal with emotionally and psychologically."

15

There is substantial competent evidence to support the district court's finding that the gravity of Marion's offense and severity of his sentence do not result in an inference of gross disproportionality. Because Marion fails to satisfy the threshold test for determining whether a sentence is cruel and unusual punishment, further consideration of his case-specific Eighth Amendment claim is unnecessary.

*Categorical Challenge*

In a categorical challenge brought under the Eighth Amendment, a defendant must show "that an entire class of sentences is unconstitutionally disproportionate given the severity of the sentence, the gravity of the crime, and the type of offender." *Williams*, 636 F.3d at 1233. When considering categorical challenges to classes of sentences, we must first consider "'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue." *Graham*, 560 U.S. at 61.

The district court rejected Marion's categorical challenge, stating it was unaware of any similar cases—either within Kansas or in other states—finding it is unconstitutional to sentence to lifetime postrelease supervision persons without any prior convictions who commit sex offenses against children. On appeal, Marion argues there is a national consensus against lifetime postrelease supervision for the nature of his offense and his class of offenders. He reiterates that only five states impose a mandatory lifetime term of postrelease supervision for his class of offenders.

In *Mossman*, our Supreme Court rejected a categorical argument raised by a defendant convicted of aggravated indecent liberties with a child. The *Mossman* court relied on *Williams*, in which the Ninth Circuit Court of Appeals considered whether

16

lifetime supervised release for child pornography was cruel and unusual punishment. In rejecting the constitutional challenge, the court stated:

> "'Here, "objective indicia" suggest that society is comfortable with lifetime sentences of supervised release for sex offenders, as such sentences are common. According to the United States Sentencing Commission, in the last five years, federal courts have sentenced 1875 defendants convicted of child pornography and child prostitution crimes to lifetime supervised release. See U.S. Sentencing Comm'n, Federal Offenders Sentenced to Supervised Release 58-59 (July 2010), www.ussc.gov/general/20100722_Supervised_Release.pdf. By way of comparison, in banning the sentence of life without parole for juvenile nonhomicide offenders, the Supreme Court noted that there were then just 123 people in the [country] serving such sentences. See *Graham*, 130 S. Ct. at 2024. Further, the percentage of federal sex offenders receiving life terms of supervised release is increasing, climbing from 9.3 percent in 2005, to 20.5 percent in 2009. [Citation omitted.]'" *Mossman*, 294 Kan. at 929-30, (quoting *Williams*, 636 F.3d at 1233-34).

Furthermore, as our Supreme Court has previously stated in *Cameron* and in *Mossman*, several other states have adopted lifetime postrelease supervision for many, if not all, sexually violent crimes. Based on these developments, the court concluded that the numbers cited in *Williams* do not reflect the total number of sex offenders subject to lifetime postrelease supervision. *Cameron*, 294 Kan. at 897; *Mossman*, 294 Kan. at 930.

Next, guided by "'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,'" this court must determine in the exercise of its own independent judgment whether the punishment in question violates the United States Constitution. *Graham*, 560 U.S. at 61. In this inquiry, the court should consider whether the challenged sentencing practice serves the legitimate penological goals of retribution, deterrence, incapacitation, and rehabilitation. 560 U.S. at 71.

17

Marion claims his sentence does not serve any of the penological goals addressed by *Graham*. He contends that lifetime postrelease supervision does not serve the goal of retribution because it is not related to an offender's personal level of culpability. He argues that it does not meet the goal of deterrence because an offender's criminal history already serves to deter him or her from committing any additional crimes. Similarly, Marion asserts that the punishment does not further the goal of incapacitation because it is imposed on persons convicted of numerous sexual offenses without any determination of whether an offender has a high risk of reoffending. Finally, he concludes that lifetime postrelease supervision does not meet the goal of rehabilitation because, regardless of an offender's age and no matter how much an offender improves his or her moral character, the term of supervision is for the duration of the offender's natural life.

In *Williams*, the Ninth Circuit Court of Appeals specifically considered whether lifetime postrelease supervision served legitimate penological goals. It stated that the goals of rehabilitation and incapacitation "are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again." The court also noted: "Supervised release can further the end of rehabilitating sex offenders. . . . Relatedly, supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may be able to detect problems before they result in irreparable harm to innocent children." 636 F.3d at 1234.

In *Mossman*, our Supreme Court found that the Ninth Circuit's conclusion applied equally to persons sentenced in Kansas to postrelease supervision for the crime of aggravated indecent liberties with a child. *Mossman*, 294 Kan. at 930. Though the defendant in *Mossman* was a first-time sex offender—like Marion—the court found the penological goals of deterrence, incapacitation, and rehabilitation were met regardless of

18

whether the offender committed one or many offenses. Accordingly, the *Mossman* court held a sentence to lifetime postrelease supervision was not categorically disproportionate. 294 Kan. at 930.

We must follow the guidance of our Supreme Court and consider the position taken by the Ninth Circuit Court of Appeals and find that Marion's sentence of lifetime postrelease supervision for his conviction of indecent liberties with a child is not categorically disproportionate and, therefore, is not cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Affirmed.