NOT DESIGNATED FOR PUBLICATION

No. 114,311

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEVIN FUNDERBURK,
*Appellant.*

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed September 2, 2016. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., LEBEN, J., and HEBERT, S.J.

LEBEN, J.: Kevin Funderburk appeals the district court's order that, after release from his 260-month prison sentence for attempted rape and aggravated battery, he be subject to lifetime postrelease supervision. Funderburk argues that lifetime postrelease supervision in his case constitutes cruel or unusual punishment in violation of Section 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution.

But the district court carefully considered the three factors it must consider to make sure that punishment is not unconstitutionally excessive: (1) the nature of the crime

and the character of the offender; (2) how the punishment for this crime compares to other serious Kansas offenses; and (3) how other jurisdictions punish the same crime. See *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). With regard to the first factor, Funderburk attacked and tried to rape a 71-year-old woman who let him in from the cold as an act of kindness, and he has an extensive criminal record, which includes convictions for serious offenses like assault with a deadly weapon and aggravated battery. The Kansas Supreme Court has agreed in many cases that the second and third factors usually don't outweigh the first, especially when the sentence isn't grossly disproportionate. See *State v. Funk*, 301 Kan. 925, 941-43, 349 P.3d 1230 (2015); *State v. Mossman*, 294 Kan. 901, 915-19, 281 P.3d 153 (2012). After considering these factors, we find no error in the district court's determination that lifetime postrelease supervision did not amount to cruel or unusual punishment against Funderburk.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, Funderburk convinced a 71-year-old woman to let him sleep at her house out of the cold for a few hours. Once inside, Funderburk took off his pants and underwear and attacked the woman. He told her that he was going to have sex with her and called her a bitch. He punched the woman in the face several times and bit her on both arms, resulting in swelling of the face and visible bite marks. But the woman struck Funderburk in the head several times with a frying pan and was able to get away. Police found Funderburk unconscious in the back utility room of her house.

As part of a plea agreement, Funderburk pled guilty to attempted rape and aggravated battery in April 2011. At sentencing, the district court determined Funderburk's criminal-history score to be an A, the highest possible score, based on several past convictions. The court sentenced him to 260 total months in prison (247 months for attempted rape plus 13 months for aggravated battery) with 36 months of postrelease supervision.

2

The district court's original sentence of only 36 months of postrelease supervision was legally wrong: Funderburk should have been sentenced to lifetime postrelease supervision. Under K.S.A. 2010 Supp. 22-3717(d)(1)(G) and (d)(2), defendants convicted of certain sexually violent crimes, including attempted rape, *must* be sentenced to lifetime postrelease supervision. In April 2015, the State filed a motion to correct an illegal sentence, asking the court to correct the postrelease-supervision period from 36 months to lifetime supervision. Because Funderburk's sentence did not comply with the statutory guidelines, his sentence was illegal; he doesn't dispute that on appeal. See *State v. Moncla*, 301 Kan. 549, Syl. ¶ 2, 343 P.3d 1161 (2015) (sentence is illegal if it fails to comply with applicable statutory provisions); *State v. Ballard*, 289 Kan. 1000, 1012, 218 P.3d 432 (2009) (sentence was illegal when court ordered 36 months of postrelease supervision for crime that required lifetime postrelease supervision). At the hearing on the motion, however, Funderburk argued that imposing lifetime postrelease supervision would violate United States and Kansas constitutional provisions prohibiting cruel and unusual punishment. The district court disagreed and ordered Funderburk to lifetime postrelease supervision as Kansas statutes require.

Funderburk has appealed to this court, again arguing that lifetime postrelease supervision in his case constitutes cruel or unusual punishment.

ANALYSIS

Funderburk challenges lifetime postrelease supervision under Section 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution.

In determining whether a sentence is cruel or unusual under the United States and Kansas Constitutions, the district court must make both factual and legal determinations.

3

*State v. Seward*, 296 Kan. 979, 981, 297 P.3d 272 (2013). On appeal, we review the district court's factual findings to determine whether substantial evidence supports them; we then review its legal conclusions independently, with no required deference to the district court. *Funk*, 301 Kan. at 933.

The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 9 of the Kansas Constitution Bill of Rights similarly provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."

Defendants may raise two types of challenges under the Eighth Amendment: (1) a case-specific challenge in which the defendant claims the length of his or her sentence is grossly disproportionate to the offense, given all the circumstances of the case; or (2) a categorical challenge in which the defendant asserts that a particular punishment is inherently disproportionate for a specific class of offenders (such as juveniles or those with intellectual disabilities). *Graham v. Florida*, 560 U.S. 48, 59-61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Funderburk makes case-specific challenges under both section 9 and the Eighth Amendment; he does not make a categorical challenge.

The Kansas Supreme Court has said that its method for analysis of a Section 9 challenge "'applies with equal force'" to a case-specific Eighth Amendment challenge. *Seward*, 296 Kan. at 990. Even so, in case there may be slight differences between how the Kansas Supreme Court evaluates claims under Section 9 and how the United States Supreme Court evaluates claims under the Eighth Amendment, see *Mossman*, 294 Kan. at 922-24, we will separately address the claims under each constitution.

*Section 9 of the Kansas Constitution Bill of Rights*

In determining whether a punishment is cruel or unusual under Section 9, Kansas courts continue to rely on the analysis set out in the Kansas Supreme Court's 1978 decision in *Freeman*. See, *e.g.*, *Funk*, 301 Kan. at 935; *Mossman*, 294 Kan. at 908. In *Freeman*, our Supreme Court said that a punishment could violate Section 9, even if "not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *Freeman*, 223 Kan. at 367. The court laid out three factors, now referred to as the *Freeman* factors, to analyze the issue:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

> "(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

In considering the *Freeman* factors, no one factor is controlling, and the court should consider each factor of the test—but one factor may weigh so heavily in a specific case that it determines the outcome. *Funk*, 301 Kan. at 935; *State v. Cameron*, 294 Kan. 884, 890, 281 P.3d 143 (2012). In determining how well the punishment fits the crime, the case-specific facts are a "'necessary part of the overall analysis.'" *Cameron*, 294 Kan. at 890 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 [2008]).

5

Freeman *Factor 1: Nature of the Offense and Character of the Offender*

At the hearing on the State's motion to correct an illegal sentence, Funderburk argued that the first *Freeman* factor weighed in his favor and against imposing lifetime postrelease supervision because: (1) the crime was only an attempt and not completed; (2) he was only 25 years old at the time; (3) after serving the prison sentence, he will have matured and will "think things through much better at that age"; and (4) he had been a model prisoner and had received no disciplinary violations.

The district court rejected Funderburk's arguments and found that the first *Freeman* factor weighed in favor of the State, given the violent, aggressive nature of the crime:

> "I do recall this case and I even found a post-it note that I had written back in 2010 in which I noted that it was, if it was not for the heroism and determination of the victim in this case Mr. Funderburk would have completed a much more serious crime and be subject to much more serious penalties, either a completed rape or a murder. As it was because this lady had the grit and determination to fight him off and knock him out cold with a skillet we only had an attempted rape so I don't recall he ever really thanked her for saving him many, many years of sentence but she did. . . .
>
> . . . .
>
> ". . . [T]his crime when we talk about the nature of the crime was an unusually violent and aggressive attempted rape where he was much younger, much stronger than this kind person who really had no means to defend herself other than the skillet that she finally acquired, so he was very, very violent. It was totally unprovoked and there's nothing that even leans in the favor of justification or mitigation or anything, and then the disparity in the age and strength of the victim compared to the defendant only aggravates that so this is about as bad of an attempted rape as I can think of, and it's especially horrifying because it was perpetrated in the home of the victim who lived alone; the one place on the Earth where she should be able to go and feel safe is where he chose to

engage in this violent crime against her, so the nature of the offense mil[]itates against Mr. Funderburk and in favor of lifetime post[]release."

The court also found that Funderburk's extensive criminal history, including convictions for assault, aggravated battery, violation of a protective order, and burglary of a residence, weighed in favor of imposing lifetime postrelease supervision. It noted that such convictions "indicate[] somebody who was engaged over a period of years in conduct that violates people's personal right to be safe and free from personal violent attack."

On appeal, Funderburk argues that the district court did not give sufficient weight to his young age when he committed the crime, the fact that he did not complete the crime, and his good behavior in prison. We do not agree.

First, the district court did not fail to give sufficient weight to Funderburk's young age. Funderburk was an adult, age 25, at the time he committed the crime. In *Mossman*, the Kansas Supreme Court held that lifetime postrelease supervision was not cruel or unusual punishment for a 25-year-old defendant who had sex with a 15-year-old, rejecting the defendant's argument that it was a consensual sexual relationship that did not harm the victim in any violent way. *Mossman*, 294 Kan. at 903, 910, 920-21. Likewise, the *Funk* court upheld an 18- or 19-year-old defendant's sentence to lifetime postrelease supervision for attempted solicitation of a child after he engaged in sexual activity with a 14-year-old, despite the defendant's argument that he was a passive participant in the activity and that the activity had not resulted in any physical or emotional injury. *Funk*, 301 Kan. at 926-28, 936-37, 942-43. Here, Funderburk violently attacked an elderly woman while attempting to rape her, resulting in physical injuries to the woman. One of the explicit considerations in evaluating the first *Freeman* factor is the violent or nonviolent nature of the offense. *Freeman*, 223 Kan. at 367. The district

7

court could properly conclude that Funderburk's violent crime warranted lifetime postrelease supervision.

Second, it would be reasonable to find that Funderburk's offense weighed in favor of lifetime postrelease supervision, even though he only attempted to commit rape and was not able to complete the crime. In several cases, Kansas appellate courts have upheld the imposition of lifetime postrelease supervision when the defendant was convicted of attempted sexual offenses. *Funk*, 301 Kan. 925, Syl. ¶ 3 (attempted indecent solicitation of a child); *State v. Barrera*, No. 104,667, 2013 WL 517581, at *9-10 (Kan. App.) (unpublished opinion) (attempted rape), *rev. denied* 297 Kan. 1248 (2013). And, as the district court noted, the only reason that Funderburk did not complete the crime was because the victim was able to fight him off and get away. The district court did not err in concluding that the violent, aggressive nature of the attempted rape weighed in favor of imposing lifetime postrelease supervision, even if Funderburk was not able to complete the crime of rape.

Third, Funderburk has not explained how his lack of prison disciplinary violations renders lifetime postrelease supervision a cruel or unusual punishment. Just because Funderburk hasn't gotten in trouble while incarcerated after this offense does not mean he should receive a lesser punishment for the crime he already committed. Nor does it somehow turn an otherwise acceptable punishment into a cruel or unusual one. Even before being convicted of attempted rape, Funderburk had a fairly extensive criminal history, including several crimes that involved harming others—assault, battery, aggravated battery, residential burglary, violation of a protective order, and assault with a deadly weapon. The goals of postrelease supervision include deterrence, incapacitation, and rehabilitation. See *Mossman*, 294 Kan. at 911. Lifetime postrelease supervision seems a reasonable way to deter Funderburk from reoffending and to promote rehabilitation once he is released.

Freeman *Factor 2: Comparison of Punishments in Kansas*

The second *Freeman* factor requires the court to compare the punishment in this case with punishments imposed for other, more serious crimes in Kansas. If more serious crimes are punished less severely than Funderburk's crime, Funderburk's punishment "is to that extent suspect." See *Freeman*, 223 Kan. at 367. In evaluating the second *Freeman* factor, the court also considers the punishment goals of the sentence, the seriousness of the defendant's crime, and other considerations under the first *Freeman* factor. *Funk*, 301 Kan. at 941.

In discussing the second factor, the district court acknowledged that there are "some crimes that probably are by most people's account more egregious than attempted rape but don't carry lifetime post[]release." But the court concluded that "sex crimes are different" than other crimes because "[p]eople that engage in sex crimes tend to have proclivity for those kinds of behaviors and tend to repeat those kind of behaviors again and again." The court concluded that, based on sex offenders' increased rate of reoffending, it wasn't "shocking to the Court that this court would be asked to impose lifetime post[]release for this kind of a crime."

On appeal, Funderburk argues that lifetime postrelease supervision for attempted rape is cruel or unusual punishment because other "more serious" offenses are punished less severely. In Kansas, most prison sentences are based on the severity level of the crime and the defendant's criminal history. Most Kansas criminal statutes list the severity level of the offense, ranging from 1 (most serious) to 10 (least serious); the more serious the crime, the longer the potential sentence. See, *e.g.*, K.S.A. 2015 Supp. 21-5503(b)(1) (listing severity levels of different manners of rape); K.S.A. 2015 Supp. 21-6804(a) (sentencing grid). Funderburk identifies several severity-level-1 or -2 offenses that would require only 36 months of postrelease supervision. He was convicted of attempted rape, a severity-level-3 offense that nonetheless requires lifetime postrelease supervision. See

9

K.S.A. 2015 Supp. 21-5301(c)(1); K.S.A. 2015 Supp. 21-5503(b)(1)(A); K.S.A. 2010 Supp. 22-3717(d)(1)(G) and (d)(2)(A). According to Funderburk, his sentence to lifetime postrelease supervision is disproportionate to his crime because other more serious crimes, such as second-degree murder and human trafficking, require only 36 months of postrelease supervision.

The Kansas Supreme Court and this court have previously rejected nearly identical arguments to this one. *Funk*, 301 Kan. at 941-42; *Mossman*, 294 Kan. at 912-17; *Cameron*, 294 Kan. at 892-93; *State v. Marion*, 50 Kan. App. 2d 802, 809-11, 333 P.3d 194 (2014), *rev. denied* 302 Kan. 1017 (2015); *Barrera*, 2013 WL 517581, at *3-4 (applying reasoning in *Mossman* and *Cameron* to attempted-rape conviction). Yet Funderburk fails even to acknowledge the large body of authority against his position. See Kansas Rules of Professional Conduct 3.3(a)(2) (2015 Kan. Ct. R. Annot. 601) (requiring attorney to disclose to a court any legal authority in the controlling jurisdiction that the attorney knows is adverse to his or her client's position).

As the Kansas Supreme Court explained in *Funk* and *Mossman*, the proportionality (or how well the punishment fits the crime) of a defendant's sentence cannot be determined solely by comparing the term of postrelease supervision for certain sex offenses with the term for other serious offenses. *Funk*, 301 Kan. at 941 (citing *Mossman*, 294 Kan. at 913-14). Someone convicted of the severity-level-1 or -2 crimes that Funderburk identified, who had the same criminal-history score, would have a longer prison sentence (442 to 653 months) than Funderburk had for attempted rape (247 months). See K.S.A. 2015 Supp. 21-6804(a). While Funderburk has an overall longer sentence due to lifetime postrelease supervision than someone convicted of a severity-level-1 or -2 crime that requires only 36 months of postrelease supervision, he will be able to serve most of that sentence in a less restrictive environment than prison. See *Mossman*, 294 Kan. at 913. In *Funk*, the Supreme Court reasoned that it would be more appropriate to compare the punishments for various sex crimes and noted that more

serious sex crimes are punished more severely with longer prison sentences, even if the postrelease-supervision period is the same. *Funk*, 301 Kan. at 941-42. Funderburk has not pointed to any specific crime that, compared to his, is both more serious and punished less severely.

The *Mossman* court concluded that the defendant's sentence to lifetime postrelease supervision for a sexually violent crime was not grossly disproportionate to the sentence for other serious crimes (like second-degree murder) when it factored in the other considerations in the first *Freeman* factor, such as the goals of the punishment and the seriousness of the crime. 294 Kan. at 917. Similarly, any difference between Funderburk's sentence and sentences imposed for more serious crimes with shorter terms of postrelease supervision is not so significant as to outweigh the first *Freeman* factor or to render the sentence grossly disproportionate to the crime. See 294 Kan. at 917; *Barrera*, 2013 WL 517581, at *4. The district court did not err in determining that the second *Freeman* factor weighed in favor of imposing lifetime postrelease supervision.

Freeman *Factor 3: Comparison with Punishments in Other States*

The third *Freeman* factor calls for the court to compare the penalty of lifetime postrelease supervision for this offense with punishments for the same crime in other states. On the third factor, Funderburk's trial attorney said that she had not had time to research other jurisdictions' punishments for the same crime but asked the court to do so and make its finding. The district court stated that it was adopting the reasoning in past cases, including *State v. Cameron* and *State v. Mossman*, and held that lifetime postrelease supervision was not cruel or unusual punishment.

On appeal, Funderburk argues that because only one other state (Oklahoma) has mandatory lifetime postrelease supervision with no possibility of discharge or release for this type of offense, the punishment is cruel or unusual. See Okla. Stat. tit. 22,

11

§ 991a(A)(13) (2015) (supervision for period correlates with obligation to register as a sex offender); Okla. Stat. tit. 57, § 584(N)(2) (2015) (lifetime registration for certain crimes including attempted rape); Okla. Stat. tit. 21, §1114 (2015) (statute criminalizing rape). He argues that several other states that have mandatory lifetime postrelease supervision for certain sex offenses allow the possibility of release or discharge at some point; he adds that states with no possibility of release or discharge (other than Kansas and Oklahoma) reserve mandatory lifetime postrelease supervision for cases involving more serious or repeat offenses or offenders the court has deemed dangerous or likely to reoffend.

Kansas appellate courts have rejected the argument that mandatory lifetime supervision is cruel or unusual because it is uncommon. The *Mossman* court conducted an extensive analysis of states imposing lifetime postrelease supervision for sex crimes. 294 Kan. at 917-19. It held that lifetime postrelease supervision was not cruel or unusual punishment for aggravated indecent liberties with a child, even though Kansas was one of only a few states that required that punishment:

> "[I]t seems fair to say that less than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as Mossman's, and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." 294 Kan. at 920.

In *Barrera*, a panel of this court applied *Mossman* to reject the defendant's argument that mandatory lifetime postrelease supervision for attempted rape is cruel or unusual because only one other state imposes it for that crime. 2013 WL 517581, at *5.

12

Here, Funderburk has made no arguments that have not previously been rejected by Kansas courts and has once again failed even to acknowledge or address the authority against his position. See *State v. Ross*, 295 Kan. 424, 428, 284 P.3d 309 (2012) (noting defendant did not "produce new arguments inviting reconsideration" of *Mossman* and *Cameron*). He admits that Kansas is not the only state to impose mandatory lifetime postrelease supervision for attempted rape, and he has not shown that any other court has found lifetime postrelease supervision to be cruel or unusual punishment. See *State v. Stone*, No. 111,989, 2015 WL 3875043, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 303 Kan. ___ (December 14, 2015). Although Kansas may punish sexually violent offenders more severely than many other jurisdictions, lifetime postrelease supervision is not cruel or unusual punishment. The district court did not err in determining the third *Freeman* factor weighed in favor of the State.

In sum, Funderburk's sentence to lifetime postrelease supervision is not cruel or unusual punishment under any of the *Freeman* factors. Funderburk committed a very violent offense when he attempted to rape the victim, causing facial swelling and bite marks. And the only reason he did not complete the crime was because the woman was able to fight him off and get away. He also had a substantial criminal history, including several convictions for crimes that involved harming a person. Postrelease supervision furthers legitimate goals of deterrence, retribution, incapacitation, and rehabilitation. The seriousness of the crime and legitimate goals of lifetime postrelease supervision "'outweigh the lack of strict proportionality with other sentences in Kansas and other jurisdictions, especially given that the sentence is not grossly disproportionate.'" *Funk*, 301 Kan. at 943 (quoting *Mossman*, 294 Kan. at 921). The district court did not err when it found that lifetime postrelease supervision did not constitute cruel or unusual punishment under the Kansas Constitution.

*The Eighth Amendment*

Funderburk also argues that his sentence to lifetime postrelease supervision constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution based on the circumstances of the case.

Whether a sentence is cruel and unusual punishment under the Eighth Amendment is based on whether the punishment is appropriately graduated and proportional to the offense. *Graham*, 560 U.S. at 59. The Eighth Amendment prohibits only sentences that are grossly disproportionate to the crime. *Ewing v. California*, 538 U.S. 11, 22, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003); *Ross*, 295 Kan. at 429.

To determine whether a sentence is grossly disproportionate based on the case-specific facts of the crime, the court first compares the seriousness of the offense and the severity of the punishment. In doing so, the court may consider the "'offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history, and a particular offender's propensity for violence.'" *State v. Swint*, 302 Kan. 326, 347, 352 P.3d 1014 (2015) (quoting *State v. Woodward*, 294 Kan. 717, 721, 280 P.3d 203 [2012]). If that comparison leads the court to infer that the sentence is grossly disproportionate, then the court compares the sentence with sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions. But it is a rare case in which a court will determine that the sentence is grossly disproportionate to the crime. *Graham*, 560 U.S. at 60. In fact, the United States Supreme Court has frequently held that life sentences for nonviolent theft or drug crimes are not cruel and unusual punishment. See *Mossman*, 294 Kan. at 923 (citing cases).

In this case, Funderburk attacked and attempted to rape an elderly woman who had shown him kindness by allowing him to enter her home to get some rest out of the cold.

14

He punched her and bit her, and the only reason that he didn't rape her was because she escaped. Funderburk also had an extensive criminal history that included convictions and adjudications for assault with a deadly weapon, aggravated battery, and violating a protective order. Funderburk's crime was very serious and warranted imposing a very serious punishment. On these facts, imposing lifetime postrelease was not grossly disproportionate to the crime. The district court properly concluded that the sentence did not violate either the Eighth Amendment to the United States Constitution or Section 9 of the Kansas Constitution Bill of Rights.

We affirm the district court's judgment.