NOT DESIGNATED FOR PUBLICATION

No. 116,837

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERRID LOGAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed February 2, 2018. Affirmed in part, vacated in part, and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Anna M. Jumpponen*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MALONE and ATCHESON, JJ.

PER CURIAM:  Jerrid Logan appeals the trial court's denial of his presentencing motion to withdraw pleas, arguing that he should be allowed to withdraw his pleas because he entered his pleas as a result of prosecutorial vindictiveness. He also argues that the trial court erred when it calculated his criminal history score, imposed lifetime postrelease supervision, and ordered that he pay all of his Board of Indigents' Defense Services (BIDS) attorney fee. As considered below, only Logan's final argument concerning the trial court's assessment of Logan's BIDS attorney fee is persuasive.

1

Therefore, we affirm in part, vacate in part, and remand to the trial court with directions to reconsider its assessment of Logan's BIDS attorney fee.

On July 7, 2015, the State charged Logan with the following: (1) one count of aggravated kidnapping, a severity level 1 person felony in violation of K.S.A. 2015 Supp. 21-5408(b); (2) one count of rape, a severity level 1 person felony in violation of K.S.A. 2015 Supp. 21-5503(a)(1)(A); (3) two counts of aggravated criminal sodomy, each severity level 1 person felonies in violation of K.S.A. 2015 Supp. 21-5504(b)(3)(A); (4) one count of kidnapping, a severity level 3 person felony in violation of K.S.A. 2015 Supp. 21-5408(a)(2); (5) two counts of attempted rape, each severity level 3 person felonies in violation of K.S.A. 2015 Supp. 21-5503(a)(1)(A) and K.S.A. 2015 Supp. 21-5301; (6) one count of aggravated robbery, a severity level 3 person felony in violation of K.S.A. 2015 Supp. 21-5420(b); (7) one count of aggravated sexual battery, a severity level 5 person felony in violation of K.S.A. 2015 Supp. 21-5505(b)(1); (8) one count of aggravated burglary, a severity level 5 person felony in violation of K.S.A. 2015 Supp. 21-5807(b); (9) one count of aggravated battery, a severity level 7 person felony in violation of K.S.A. 2015 Supp. 21-5413(b); (10) two counts of aggravated assault, each severity level 7 person felonies in violation of K.S.A. 2015 Supp. 21-5412(b)(1); and (11) one count of unlawful possession of a controlled substance, a severity level 5 drug felony in violation of K.S.A. 2015 Supp. 21-5706(a) and(c)(1). Logan's charges stemmed from his alleged attacks on two women—J.C. and R.N.—in the early morning hours on July 3, 2015.

Eventually, the State severed the preceding charges into two cases. The State charged all the crimes stemming from the alleged attacks on J.C. and R.N. in Saline County criminal case No. 15 CR 0629. Meanwhile, the State charged Logan with possession of a controlled substance based on methamphetamine found on him when he was arrested in Saline County criminal case No. 15 CR 1148. Logan challenged the State's decision to sever the charges. He filed a motion for joinder. In his motion, Logan

2

asserted that the "State [was] clearly severing the possession count so that the two cases will score against each for criminal purposes and potentially allow for a much harsher sentence." Nevertheless, Logan later withdrew his motion for joinder when he accepted a plea agreement with the State.

Under the terms of his written plea agreement, Logan would plead either guilty or no contest to the following crimes: one count each of aggravated criminal sodomy, kidnapping, attempted rape, robbery, and aggravated assault. The State would recommend to the trial court that he be sentenced to the aggravated grid box sentence for each of his convictions and that he serve consecutive sentences for his aggravated criminal sodomy, kidnapping, and robbery convictions. Additionally, Logan would be free to argue for any lower sentence—which the State would oppose. Logan also acknowledged in the written plea agreement that his attorney, Jeffery S. Adam, had provided adequate representation, including a thorough discussion of the terms of the plea agreement and possible defenses he had if he went to trial.

On February 23, 2016, at Logan's plea hearing, Logan made the following statements during the plea colloquy: (1) he had reviewed the charges against him with Adam; (2) he had discussed the State's evidence against him with Adam; (3) he had discussed possible trial defenses with Adam; (4) he had reviewed the sentencing guidelines and his potential sentencing outcomes with Adam; (5) he had been satisfied with Adam's representation; (6) he had not been forced or coerced by anyone to accept the plea agreement; (7) he had freely, knowingly, voluntarily, and intelligently entered into the plea agreement; (8) he had sufficient time to review his case; and (9) he had no questions for anyone, including the State's attorney. Moreover, he felt comfortable moving forward by entering his pleas. After the plea colloquy, the trial court accepted Logan's no contest pleas to each count of aggravated criminal sodomy, kidnapping, attempted rape, robbery, and aggravated assault.

On March 16, 2016, before sentencing, Logan moved pro se to withdraw his pleas. In this motion, Logan made three arguments why he should be allowed to withdraw his pleas. First, he asserted that he had tried to fire Adam "from the time he was appointed" because Adam was biased against him because of the nature of the "pending allegations against [him]." Logan also asserted that Adam would "not listen to anything [he] had to tell him and only told [him] what [he] was guilty of." Second, he alleged:

> "I was threaten[ed] and coerced into taking this deal. I was told if I didn't take said deal that the courts were going [to] run what all my allegations consecutive even this was one case with all pending charges under one case, then they dropped the possession to run all other charges consecutive."

Third, Logan seemingly asserted that Adam gave him errant legal advice regarding a potential trial defense.

On March 21, 2016, the trial court allowed Adam to withdraw as Logan's counsel while also appointing Logan new counsel—Julie Effenbeck. Later, the trial court held a hearing on Logan's pro se motion to withdraw his pleas. At this hearing, Logan, who was represented by Effenbeck, testified on his own behalf, and the State called Adam to testify on its behalf.

When asked what the word "coerced" meant to him, Logan stated: "[S]omebody telling you like pretty much just about all you're going to get basically." Logan frequently stated that he had been coerced because he was being "boxcarred." He testified: "I probably wouldn't have [taken the plea agreement] if you know if he wasn't telling me that with one of my charges they would have boxcarred me and gave me more time for it." He further testified that the State tried to "boxcar" him "because really [he does not] have a criminal history." On cross-examination, Logan admitted that it was his idea to approach the State for the plea agreement he ultimately accepted. When asked about what

4

good cause existed to allow him to withdraw his pleas, Logan testified: "I should be able to look at my case a little bit more and plus get a little bit more help in it."

Adam testified about a plea agreement that Logan had almost entered into before he ultimately accepted the plea agreement at issue. Adam testified that Logan decided not to enter into this previous plea agreement minutes before his plea hearing. When questioned whether he had threatened or coerced Logan to accept that prior plea agreement, Adam stated he did not. Concerning the plea agreement Logan ultimately accepted, Adam testified that if he had any concerns about Logan not wanting to enter his pleas he would have brought it to the court's attention like "[he] did the first time around."

The trial court denied Logan's motion to withdraw pleas. It concluded that Logan "was represented by competent counsel, [he] was not misled, he was not coerced, he was not mistreated, he was not unfairly taken advantage of and that the plea was fairly and understandingly made." In making these findings, the trial court made specific reference to its observations of Logan during the plea colloquy. Then, the trial court sentenced Logan to a controlling sentence of 372 months' imprisonment followed by lifetime postrelease supervision; this sentence resulted from the trial court imposing the aggravated grid box KSGA sentence for each of Logan's convictions while also running each of his sentences consecutive to one another. The trial court also ordered Logan to pay the entirety of his outstanding BIDS attorney fee of $2,000.

*Did the Trial Court Err By Denying Logan's Motion to Withdraw His Pleas?*

Under K.S.A. 2016 Supp. 22-3210(a)(3), a plea of guilty or nolo contendere may be accepted by the trial court only if the defendant's "plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." Under K.S.A. 2016 Supp. 22-3210(d)(1), "[a] plea of guilty or nolo contendere, for good cause

5

shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." To establish that a trial court erred by denying a presentencing motion to withdraw pleas, a defendant must establish that the trial court abused its discretion. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). A court abuses its discretion if its decision was based on an error of law, based on an error of fact, or was otherwise unreasonable. 305 Kan. at 449.

In *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), our Supreme Court held that to comply with K.S.A. 22-3210(d), "the trial court should evaluate whether '(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made. [Citation omitted.]'" The preceding factors are "'viable benchmarks'" that the court should consider when determining whether good cause exists, but the existence of these factors are not the only way defendants can establish good cause to withdraw pleas. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

On appeal, Logan argues that the trial court errantly focused its analysis on the *Edgar* factors alone. Indeed, Logan does not challenge any of the trial court's findings and conclusions of law regarding the quality of Adam's representation or whether Adam misled, coerced, mistreated, or unfairly took advantage of him. He also does not challenge the trial court's findings about whether his pleas were fairly and understandingly made. Instead, citing *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978), Logan contends that the act of severing his charges constituted prosecutorial vindictiveness.

Nevertheless, because Logan has not challenged the trial court's findings and rulings based on the *Edgar* factors, he has abandoned any such challenges he may have had. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (holding an issue

not briefed is deemed abandoned). Thus, it is unneccessary for us to address the trial court's findings and rulings under the *Edgar* factors.

Regarding his claim of prosecutorial vindictiveness, Logan points out that in his pro se motion to withdraw pleas, he complained about the State "drop[ping] the possession [of a controlled substance charge] to run all other charges consecutive." He then argues:

> "While the hearing conducted on [his] motion focused primarily on the actions of [counsel] Adam prior to [his] plea, [his] testimony shows that this is the wrong perspective from which to view the issue relating to coercion. Instead, the proper focus of the inquiry should be related to the State's actions in severing his possession [of a controlled substance charge] from the rest of the allegations and filing it within a new case."

Logan contends that the trial court should have considered his testimony about being "boxcarred," as well as his testimony about the State likely refiling his charges in two separate cases if the court had granted his motion to withdraw pleas, as arguments concerning prosecutorial vindictiveness. Based upon this belief, Logan requests that this court reverse the trial court's denial of his motion to withdraw pleas.

The State responds that the "accusations of prosecutorial vindictiveness are unfounded and meritless." The State emphasizes that it received permission from the trial court to file an amended complaint. It further argues that it was simply exercising its discretion when it severed Logan's charges.

Although the State has not raised this issue, the primary problem with Logan's argument is that it was not considered by the trial court below. Again, in Logan's pro se motion to withdraw pleas, Logan's second argument was that "drop[ping] the possession [of a controlled substance charge] to run all other charges consecutive" was threatening

7

and coercive conduct, which supported that he should be allowed to withdraw pleas. Clearly, this is not an explicit argument regarding prosecutorial vindictiveness. Arguably, however, under a liberal interpretation of Logan's pro se motion, one could construe his argument as an argument about prosecutorial vindictiveness. See *State v. Gilbert*, 299 Kan. 797, 798, 326 P.3d 1060 (2014) (holding that pro se motions should be liberally construed). But even if we find that Logan properly raised his argument in his pro se motion, the problem becomes what findings and rulings did the trial court make about Logan's prosecutorial vindictiveness argument?

Under Supreme Court Rule 165 (2018 Kan. S. Ct. R. 215), the trial "court must state its findings of fact and conclusions of law in compliance with K.S.A. 60-252." Under K.S.A. 2016 Supp. 60-252(a)(1), the court must "find the facts specially and state its conclusions of law separately." Yet,

> "[n]otwithstanding district judge's duties under Supreme Court Rule 165 [], 'a party also has the obligation to object to inadequate findings of fact and conclusions of law in order to preserve an issue for appeal because this gives the trial court an opportunity to correct any findings or conclusions that are argued to be inadequate.'" *State v. Carr*, 300 Kan. 1, 65, 331 P.3d 544 (2014), *rev' and remanded on other grounds*, 136 S. Ct. 633 (2016).

Here, the trial court did not make any findings of fact or conclusions of law regarding prosecutorial vindictiveness. More importantly, Logan did not object to the trial court's lack of findings and rulings. By failing to object, the trial court had no opportunity to correct its allegedly inadequate findings and lack of rulings. In turn, Logan has failed to preserve his claim of prosecutorial vindictiveness for appeal. Moreover, he has waived his claim of prosecutorial vindictiveness.

To conclude, even if this court assumes that Logan raised his claim of prosecutorial vindictiveness in his pro se motion to withdraw pleas, Logan's failure to object to the trial court's lack of findings of fact and conclusions of law was fatal. His

failure to object prevented the trial court from correcting any deficiencies in its findings and rulings, which resulted, as we previously mentioned, in a waiver of his claim. As a result, Logan's argument to withdraw his pleas fails.

*Did the Trial Court Err When Calculating Logan's Criminal History Score?*

Defendants' challenges to the calculation of their criminal history score constitute a challenge to the legality of their sentence under K.S.A. 22-3504. See *State v. Dickey*, 301 Kan. 1018, 1032, 350 P.3d 1054 (2015). Appellate courts review whether a sentence is illegal as meant under K.S.A. 22-3504 while exercising unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Moreover, because under K.S.A. 22-3504(1) courts have the authority to "correct an illegal sentence at any time," appellate courts may review a defendant's illegal sentence challenge even when raised for the first time on appeal. See *Dickey*, 301 Kan. at 1034. Thus, we may consider Logan's argument concerning the calculation of his criminal history score despite the fact he is admittedly raising it for the first time on appeal.

Logan's entire argument is that the trial court erred when it classified his 2004 Colorado conviction for theft under Colo. Rev. Stat. § 18-4-401(1)(2)(c) as felony theft. He argues that the trial court should have instead classified his theft as a misdemeanor, which would have resulted in lowering his criminal history score from G to H. Logan notes that as currently codified, theft under Colo. Rev. Stat. § 18-4-401(1)(2)(c) is "[a] class 3 misdemeanor if the value of the thing involved is fifty dollars or more but less than three hundred dollars."

Nevertheless, as the State points out under K.S.A. 2016 Supp. 21-6811(e)(2)(A), "(a)n out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction," and "[i]f a crime is a felony in another state, it will be counted as a felony in Kansas." Further, the relevant date for determining whether Logan

9

was convicted of a felony is clearly not Colo. Rev. Stat. § 18-4-401(1)(2)(c) as it is currently codified but Colo. Rev. Stat. § 18-4-401(1)(2)(c) as it was codified when Logan was convicted of violating the statute in 2004. In 2004, Colo. Rev. Stat. § 18-4-401(1)(2)(c) stated that theft was a "class 4 *felony* if the value of the thing involved is five hundred dollars or more but less than fifteen thousand dollars."

Consequently, it is readily apparent that Logan's argument is meritless as he was convicted of felony theft in Colorado.

*Did the Trial Court Err By Sentencing Logan to Lifetime Postrelease Supervision?*

Logan's next argument also concerns the legality of his sentence. Thus, as with the preceding issue, this court has unlimited review. See *Lee*, 304 Kan. at 417 (holding whether a sentence is illegal is a question of law over which appellate courts have unlimited review). Further, as with the preceding issue, we may consider Logan's argument despite the fact he is raising it for the first time on appeal. See K.S.A. 22-3504(1).

Logan's specific argument is that the 2013 amendments to K.S.A. 22-3717 created conflicting language regarding what term of postrelease supervision the trial court should impose on persons convicted of sexually violent crimes. Logan alleges that both subparagraph (D) of K.S.A. 2016 Supp. 22-3717(d)(1), which calls for sexually violent offenders to be sentenced to a set term of postrelease supervision, and (G) of K.S.A. 2016 Supp. 22-3717(d)(1), which calls for sexually violent offenders to be sentenced to lifetime postrelease supervision could apply to him based on a plain reading of those provisions. Yet, he argues under the rule of lenity, the trial court was required to sentence him under K.S.A. 2016 Supp. 22-3717(d)(1)(D).

In making his argument, Logan recognizes that this court has rejected this argument in *State v. Herrmann*, 53 Kan. App. 2d 147, 384 P.3d 1019 (2016), *rev. denied* 306 Kan. ___ (July 25, 2017). The State argues that this court should reject Logan's arguments for the same reason that the *Herrmann* court rejected Herrmann's arguments. Even so, citing the rule that one panel is not bound to the holdings of another panel, Logan argues that this court should depart from the *Herrmann* court's holdings because it was wrongly decided. Thus, to fully analyze Logan's and the State's arguments, we must review the law in dispute.

In 2006, the Legislature amended K.S.A. 22-3717(d)(1)(G) to include the provision requiring that sexually violent offenders serve lifetime postrelease supervision. See L. 2006, ch. 212, § 19. In 2013, the Legislature amended K.S.A. 22-3717(d)(1)(D), providing that defendants convicted of "sexually violent crimes" must serve a term of 12, 24, or 36 months on postrelease supervision. See L. 2013, ch. 133, § 13. Thus, in relevant part, K.S.A. 2016 Supp. 22-3717(d)(1) states:

> "(d)(1) Persons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph (G), will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows:
>
> (A) Except as provided in subparagraphs (D) and (E), persons sentenced for nondrug severity levels 1 through 4 crimes, drug severity levels 1 and 2 crimes committed on or after July 1, 1993, but prior to July 1, 2012, and drug severity levels 1, 2 and 3 crimes committed on or after July 1, 2012, must serve 36 months on postrelease supervision.
>
> . . . .
>
> (D) Persons sentenced to a term of imprisonment that includes a sentence for a sexually violent crime as defined in K.S.A. 22-3717, and amendments thereto, a sexually motivated crime in which the offender has been ordered to register pursuant to K.S.A. 22-3717(d)(1)(D)(vii), and amendments thereto, electronic solicitation, K.S.A. 21-3523, prior to its repeal, or K.S.A. 21-5509, and amendments thereto, or unlawful sexual

11

relations, K.S.A. 21-3520, prior to its repeal, or K.S.A. 21-5512, and amendments thereto, shall serve the period of postrelease supervision as provided in subsections (d)(1)(A), (d)(1)(B) or (d)(1)(C) plus the amount of good time and program credit earned and retained pursuant to K.S.A. 21-4722, prior to its repeal, or K.S.A. 2016 Supp. 21-6821, and amendments thereto, on postrelease supervision.

. . . .

(G) Except as provided in subsection (u), persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life."

Herrmann had been sentenced to lifetime postrelease supervision under subparagraph (G) following his conviction for a sexually violent crime. He appealed, arguing that under the rule of lenity, the trial court was required to sentence him under subparagraph (D) because the language of subparagraphs (D) and (G) conflicted.

The *Herrmann* court disagreed, explaining that defendants fall under either subparagraph (D) or (G), but not both:

"Subsection (d)(1) explains that persons sentenced for crimes committed after July 1, 1993, will not be eligible for parole; instead, they will be subject to mandatory postrelease supervision as provided in the subparagraphs that follow. Notably, however, this subsection (d)(1) expressly states that the mandatory postrelease supervision provided in the subparagraphs that follow *do not apply* to 'persons subject to subparagraph (G).' Subparagraph (G) provides that 'persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life.' Herrmann was convicted of attempted aggravated indecent liberties with a child, which is a sexually violent crime under subsection (d)(5)(C) and (d)(5)(M). His conviction occurred after July 1, 2006. Because Herrmann is subject to subparagraph

12

(G), no other subparagraph following subsection (d)(1) applies to him—including subparagraph (D).

". . . The provisions in each subparagraph apply to a distinct class of persons. K.S.A. 22-3717 as a whole applies to all persons convicted of a crime after July 1, 1993. See L. 1992, ch. 239, sec. 270 ('Persons sentenced for crimes committed on or after July 1, 1993, will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence.'). Subparagraph (G) was added to the statute in 2006 to create an explicit exception applicable only for 'persons convicted of a sexually violent crime committed on or after July 1, 2006.' See L. 2006, ch. 212, sec. 19 (also adding language to [d][1] excepting 'persons subject to subparagraph [G]'). Reading subparagraph (D) in pari materia, it falls under subsection (d)(1) and so applies to all persons but those expressly excluded: persons sentenced for off-grid crimes committed on or after July 1, 1993, and persons committing a sexually violent crime on or after July 1, 2006, as stated in subparagraph (G). Therefore, subparagraph (D) only applies to persons convicted of a sexually violent crime after July 1, 1993, but before July 1, 2006. Thus, there are no persons convicted of a sexually violent crime to whom both subparagraph (D) and subparagraph (G) apply. Construing the statute as a whole and giving effect to all of the statutes, as this court must, there is no conflict or ambiguity in amended subsection (d)(1).

". . . The 2013 amendments deleted the language pertaining to good-time and program credits from subparagraphs (A)-(C)—in effect, reducing the length of postrelease supervision sentences by not requiring those credits to be added to a person's postrelease term. But the legislature did not want to provide that same benefit for persons convicted of certain crimes, including sexually violent crimes. So, the legislature also amended subparagraph (D) to provide an exception for persons convicted of sexually violent crimes so that earned good-time and program credits continued to be added to their postrelease supervision period. L. 2013, ch. 133, sec. 13. In a nutshell, the postrelease supervision calculation for persons convicted of a sexually violent crime between July 1, 1993, and June 30, 2006, remained the same as it was prior to the 2013 amendments." 53 Kan. App. 2d at 152-54.

Turning our analysis back to Logan's arguments, we note that Logan contends that this court should reject the *Herrmann* court's reasoning for the following reasons: (1) The *Herrmann* court "ignore[d] the fact that both subparagraphs (D) and (G) are placed

under subsection (d)(1)"; (2) the *Herrmann* court ignored that no language within subparagraph (D) "limits application of that [subparagraph] to only those offenders sentenced for sexually violent crimes between July 1, 1993, and July 1, 2006"; and (3) the *Herrmann* court's analysis is contrary to our Supreme Court's holdings in *State v. Cameron*, 294 Kan. 884, 897, 281 P.3d 143 (2012). Nevertheless, all of these arguments are flawed.

To begin with, Logan's argument that the *Herrmann* court ignored that both subparagraph (D) and (G) are under subsection (d)(1) is clearly incorrect. It is readily apparent that the *Herrmann* court was keenly aware of this in its analysis, as it even "read[] subparagraph (D) *in pari materia*, it falls under subsection (d)(1) . . . ." (Emphasis added.) 53 Kan. App. 2d at 153. Additionally, other panels of this court have rejected this argument. See *State v. Kirk*, No. 116,609, 2017 WL 5016019, at *3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* December 4, 2017; *State v. Wol*, No. 115,633, 2017 WL 3000839, at *8 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* August 3, 2017.

Second, Logan's next argument fails for the same reason as his first. The *Herrmann* court did not ignore the fact that subparagraph (D) contains no explicit language "limit[ing] application of [it] to only those offenders sentenced for sexually violent crimes between July 1, 1993, and July 1, 2006" as Logan argues. Again, the *Herrmann* court analyzed subparagraph (D) in pari materia, which allowed it to figure out exactly when subparagraph (D) would apply and when subparagraph (G) would apply. In short, it seems that Logan believes that the *Herrmann* court failed to follow the rules of statutory construction, but interpreting provisions in pari materia is a rule of statutory construction. In any event, this past legislative session, the Legislature amended subparagraph (D) to read as follows: "Persons sentenced to a term of imprisonment that includes a sentence for a sexually violent crime as defined in K.S.A. 22-3717, and amendments thereto, committed on or after July 1, 1993, but prior to July 1, 2006 . . . ."

L. 2017, ch. 100, § 10(d)(1)(D). This amendment was clearly a favorable response to the *Herrmann* court's analysis of 22-3717(d)(1). Thus, Logan's second complaint is clearly without merit.

Logan's final complaint is similarly without merit. Logan complains that the *Herrmann* decision is contrary to our Supreme Court's decision in *Cameron*. Cameron, who have been convicted of a sexually violent crime, argued that he should have been sentenced under K.S.A. 22-3717(d)(1)(B) as opposed to K.S.A. 22-3717(d)(1)(G) based upon the rule of lenity. See 294 Kan. at 899. Our Supreme Court rejected Cameron's argument, holding that "there is no reasonable doubt that the legislature intended the more specific and more severe provision of (d)(1)(G) to apply. . . ." 294 Kan. at 900.

Logan asserts that because "the fact that the Court in *Cameron* resolved this question utilizing the rule of lenity analysis casts significant doubts whether the provisions of K.S.A. 22-3717(d)(1) and the interplay of the differing terms of postrelease supervision can be determined through a plain language requirement." Yet, despite Logan's arguments to the contrary, the *Cameron* court did not use the rule of lenity to resolve Cameron's challenge. Instead, the *Cameron* court found that the only provision that applied was subparagraph (G), meaning it never had to use the rule of lenity. 294 Kan. at 899-900. As a result, it is readily apparent that Logan's argument is incorrect. See also *Wol*, 2017 WL 3000839, at *8 (where this court rejected an identical argument).

In summary, each of Logan's arguments why this court should not follow the *Herrmann* court's analysis regarding the interpretation and application of 22-3717(d)(1)(D) and (G) is unpersuasive. Moreover, a number of panels of this court have rejected similar arguments regarding the *Herrmann* decision's applicability, ultimately deciding to adopt the *Herrmann* court's holdings. See, e.g., *State v. Stagner*, No. 116,869, 2017 WL 4848359, at *4 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* November 27, 2017; *State v. Cook*, No. 116,592, 2017 WL 4558496, at *1-2 (Kan. App.

15

2017) (unpublished opinion), *petition for rev. filed* November 13, 2017; *Kirk*, 2017 WL 5016019, at *3-4; *State v. Munoz*, No. 115,590, 2017 WL 4081374, at *12 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* October 13, 2017; *Wol*, 2017 WL 3000839, at *8-9. We further note that the Legislature's amendment approving of the *Herrmann* court's interpretation of subsection (d)(1) as well as our Supreme Court's decision to deny Herrmann's petition for review establishes more support for our position. As a result, Logan's argument fails.

*Did the Trial Court Err When Imposing the Board of Indigents' Defense Attorney Fee?*

Logan's final argument is that the trial court erred when it imposed the BIDS attorney fee on him without fully considering his financial ability to pay the fee. Logan asserts that the trial court's imposition of the BIDS attorney fee violated our Supreme Court's interpretation of K.S.A. 22-4513(b) in *State v. Robinson*, 281 Kan. 538, 546-47, 132 P.3d 934 (2006).

Logan recognizes that he did not object to the trial court's imposition of the BIDS fee below but nonetheless argues that this court can address his argument for the first time on appeal. "A failure to object to the imposition of BIDS fees has not disallowed parties from raising the issue for the first time on appeal. See *Robinson*, 281 Kan. at 541; *State v. Hawkins*, 37 Kan. App. 2d 195, 197, 152 P.3d 85 (2007), *aff'd* 285 Kan. 842, 176 P.3d 174 (2007); accord *State v. Knight*, 44 Kan. App. 2d 666, 687, 241 P.3d 120 (2010); *State v. Mosby*, No. 115,598, 2017 WL 2610765, at *11 (Kan. App. 2017) (unpublished opinion). Thus, we may consider Logan's argument even though he is raising it for the first time on appeal.

Whether the trial court erred when it imposed the BIDS fee requires this court to consider whether the trial court complied with the plain language of K.S.A. 22-4513(b), which states in relevant part: "In determining the amount and method of payment of [the

16

BIDS fee], the court *shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose. . . .* " Thus, Logan's final argument requires this court to engage in statutory interpretation, which is a question of law over which this court has unlimited review. See *Robinson*, 281 Kan. at 539.

Logan argues that the trial court never actually considered his financial resources and ability to pay the $2,000 BIDS fee as required when imposing BIDS attorney fees under K.S.A. 22-4513(b) according to our Supreme Court in *Robinson*. Based upon this belief, Logan asks this court to vacate the $2,000 BIDS fee and remand to the trial court for a hearing on his financial ability to pay the fee. The State responds that "[a]lthough the [trial court's] inquiry was scant, the [trial] court complied with the directed inquiry and resulting assessment mandated by K.S.A. 22-4513 and *Robinson*."

In *Robinson*, our Supreme Court held: "A sentencing court assessing fees to reimburse the Board of Indigents' Defense Services under K.S.A. [] 22-4513 must consider on the record at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose." 281 Kan. 538, Syl. ¶ 1. The *Robinson* court further explained that while engaging in this analysis, the sentencing court must "explicitly, stat[e] on the record how those factors have been weighed in the court's decision." 281 Kan. at 546.

In this case, the entirety of the trial court's consideration of Logan's financial resources and the nature of the burden that the fee would impose was as follows:

> "THE COURT: Okay. And Mr. Logan, do you have any mental or physical disabilities that prevent you from working full-time?
> "[LOGAN]: No.
> "THE COURT: Do you have any children under the age of 18 that you care for?
> "[LOGAN]: Yes.
> "THE COURT: How many kids do you have?

17

"[LOGAN]: One.

"THE COURT: Okay. Any reason you can't—other than your incarceration any reason you can't pay some portion of your attorney fees?

"[LOGAN]: I'm incarcerated. I can't right now.

"THE COURT: The Court will find that $2,000 will be imposed for attorney fees, find that is not an undue burden or hardship."

Clearly, although the trial court stated that it found the $2,000 BIDS attorney fee would not be an undue burden or hardship, the district court's finding was inadequate. This is because the district court failed to make "explicit" findings on the record regarding the reasons how it "weighed" the factors of Logan's financial resources and the burden that payment of a fee would impose as required by our Supreme Court in *Robinson*, 281 Kan. at 546. Indeed, the district court did not outwardly weigh any evidence either for or against Logan. This seems particularly troubling given that Logan's responses that he did have a minor dependent and could not afford to pay a portion of his BIDS fee, let alone the entirety of his BIDS fee, clearly weighs in favor of waiving or reducing the fee.

Regardless, it is readily apparent that the trial court failed to comply with the plain language of K.S.A. 22-4513(b). Thus, we vacate the trial court's assessment of the BIDS attorney fee and remand to the trial court to consider the assessment of the BIDS attorney fee in accordance with the plain language of K.S.A. 22-4513(b) and our Supreme Court's holding in *Robinson*.

Affirmed in part, vacated in part, and remanded with directions.

18